

**EXHIBIT B**

**FILED**
2023 NOV 14 09:00 AM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 23-2-22406-0 SEA

# IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## COUNTY OF KING

| | |
|---|---|
| KIMBERLY BOTTOMS, on behalf of herself and all others similarly situated, | No.: |
| Plaintiff, | CLASS ACTION COMPLAINT FOR VIOLATION OF THE CONSUMER PROTECTION ACT, RCW 19.86, AND THE COMMERCIAL ELECTRONIC MAIL ACT, RCW 19.190 |
| v. | |
| BLOCK, INC. (F/K/A, SQUARE, INC.) (D/B/A, CASH APP), | |
| Defendant. | DEMAND FOR TRIAL BY JURY |

COMES NOW the Plaintiff, KIMBERLY BOTTOMS, by and through undersigned counsel, for causes of action against the above-named Defendant, Block, Inc. (f/k/a, Square, Inc.) (d/b/a Cash App) (hereinafter "Defendant" or "Cash App"), and complains and alleges as follows:

## I.    NATURE OF THE ACTION

1.    Defendant Block, Inc. ("Defendant" or "Cash App") offers a service called Cash App that allows consumers to send and receive money through its Cash App website[1] and mobile app (the "Cash App Mobile App" or "Defendant's App"). While Cash App allows users to send and receive money at no cost, once a consumer becomes a Cash App user they must pay for additional services. For example, Cash App charges a 3% fee for transactions sent from credit cards and charges a .5% - 1.75% fee when users immediately transfer funds from their Cash App

---

[1] https://cash.app/

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  account to their bank accounts.[2] Cash App also charges ATM withdrawal fees and paper money

2  deposit fees.[3] Cash App earned $10.6 billion in revenue in 2022.[4]

3      2.     To market its products and services, Cash App created a referral program called

4  "Invite Friends."[5] Cash App encourages users to refer their contacts to its service by remunerating

5  users for each successful referral. Under the current incentives offered by the program, when a

6  referred individual signs up for Cash App, enters a referral code, and sends a "qualifying payment"

7  of at least $5 from a newly linked debit card, both the referring user and the referred contact receive

8  a bonus of $5 that expires within 14 days.[6] Cash App has offered even higher incentives to referring

9  users in the past.

10      3.     The Cash App Mobile App assists users in referring contacts. All the user has to do

11  is tap "Invite Friends" in the Cash App Mobile App, which then populates a list of the user's phone

12  contacts, and then click a "Get $5" button next to the contacts the user wants to refer. The Cash

13  App Mobile App also displays alerts to users within the application reminding them to "Invite

14  Friends" to earn $5 referral bonuses. Refer-a-friend marketing, such as Cash App's "Invite

15  Friends" program, is a way for companies to mass market their services via text message without

16  directly spamming consumers—instead they pay and enable their users to spam consumers for

17  them.

18      4.     Cash App enabled and assisted one of its users to send Plaintiff a refer-a-friend text

19  message while Plaintiff was a Washington resident.

20      5.     Cash App's conduct violated the Washington Consumer Electronic Mail Act

21  ("CEMA"), RCW 19.190.010 *et seq.*, which makes it illegal for a person to "initiate or assist in

22  the transmission of an electronic commercial text message to a telephone number assigned to a

23  Washington resident for cellular telephone or pager service ...." RCW 19.190.060.

24

25  [2] https://cash.app/legal/us/en-us/tos

26  [3] *Id.*
   [4] https://www.usesignhouse.com/blog/cash-app-stats

27  [5] https://cash.app/help/us/en-us/3124-cash-refer-friends
   [6] https://cash.app/help/gb/en-gb/3124-cash-refer-friends

28  CLASS ACTION COMPLAINT        2

6.      "Assist the transmission" means "actions taken by a person to provide substantial assistance or support which enables any person to formulate, compose, send, originate, initiate, or transmit a commercial electronic mail message or a commercial electronic text message when the person providing the assistance knows or consciously avoids knowing that the initiator of the commercial electronic mail message or the commercial electronic text message is engaged, or intends to engage, in any practice that violates the consumer protection act." RCW 19.190.010.

7.      A violation of CEMA is a "per se" violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86.010, *et seq.* RCW 19.190.100; *Wright v. Lyft, Inc.*, 406 P.3d 1149, 1154-55 (Wash. 2017).

8.      Plaintiff brings this action as a class action on behalf of persons who also received Cash App's illegal spam texts. Plaintiff's requested relief includes an injunction to end these practices, an award to Plaintiff and class members of statutory and exemplary damages for each illegal text, and an award of attorneys' fees and costs.

## II.      PARTIES

9.      Plaintiff Kimberly Bottoms is a natural person residing in Clallam County, Washington.

10.     Defendant Block, Inc. (f/k/a, Square, Inc.) (d/b/a Cash App) is incorporated in Delaware and an American multinational technology conglomerate that operates through two reportable segments (in addition to other subdivisions/subsidiaries): Square and Cash App.[7] Defendant describes Cash App as:

> an ecosystem of financial products and services to help individuals manage their money by providing financial tools that allow individuals to store, send, receive, spend, save and invest their money. Cash App seeks to redefine the world's relationship with money by making it more relatable, instantly available, and universally accessible.[8]

---

[7] https://www.sec.gov/ix?doc=/Archives/edgar/data/1512673/000162828023015762/sq-20230331.htm
[8] *Id.*

CLASS ACTION COMPLAINT                    3

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1 Defendant provides its for-profit Cash App services to Washington consumers and conducts
2 related business activities throughout Washington state. Defendant is a "person" as that term is
3 defined in RCW 19.190.010(11) and RCW 19.86.010(1).

### III. JURISDICTION AND VENUE

5      11.    This Court has subject matter jurisdiction over this civil action pursuant to, without
6 limitation, Section 6 of Article IV of the Washington State Constitution (Superior Court
7 jurisdiction, generally), RCW 19.86.090 (Superior Court jurisdiction over Consumer Protection
8 Act claims) and RCW 19.190.090 (Superior Court jurisdiction over Commercial Electronic Mail
9 Act claims).

10      12.    This Court has personal jurisdiction over Defendant under RCW 4.28.185. This
11 Court may exercise personal jurisdiction over the out-of-state Defendant because the claims
12 alleged in this civil action arose from, without limitation, Defendant's assistance in the
13 transmission of commercial electronic text messages to consumers within the State of Washington.
14 In addition, Defendant intended, knew, or is chargeable with the knowledge that its out-of-state
15 actions would have a consequence within Washington.

16      13.    This Court also has personal jurisdiction over Defendant under RCW 19.86.160.
17 For example, and without limitation, Defendant engaged and is continuing to engage in conduct
18 in violation of RCW 19.86 which has had and continues to have an impact in Washington which
19 said chapter reprehends.

20      14.    Venue is proper in King County Superior Court because, at all relevant times,
21 Defendant has transacted business in King County, including without limitation by distributing the
22 Cash App Mobile App to consumers in King County, proving providing substantial online
23 consumer banking and other financial services to residents of King County, and assisting in the
24 transmission of the marketing text messages alleged herein to residents of King County. RCW
25 4.12.025.

28   CLASS ACTION COMPLAINT       4

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

# IV. FACTUAL ALLEGATIONS

## A. The CEMA prohibits initiating or facilitating commercial text messages

15. The CEMA originally precluded unwanted emails that contain false or misleading information. The Washington legislature amended the CEMA to "limit the practice" of sending commercial text messages to cell phones. *Lyft*, 406 P.3d at 1152 (quoting WASH. LAWS OF 2003, CH. 137, § 1).

16. The CEMA prohibits persons conducting business in the state of Washington to "initiate or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service that is equipped with short message capability or any similar capability allowing the transmission of text messages." RCW 19.190.060(1).

17. The statute provides a private cause of action to persons who received texts in violation of CEMA to enjoin further violations. RCW 19.190.090.

18. A person who receives a text message in violation of the CEMA may bring a claim for damages under Washington's Consumer Protection Act (CPA), RCW 19.86 *et seq.*

19. To establish a violation of Washington's CPA, a claimant must establish five elements: (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that affects the public interest, (4) injury to plaintiff's business or property, and (5) causation. *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).

20. A violation of RCW 19.190.060 establishes all five elements of the CPA vis a vis RCW 19.190.060(2) (providing the practices prohibited under the statute "are matters vitally affecting the public interest" and "are not reasonable in relation to the development and preservation of business" and constitute "an unfair or deceptive act in trade or commerce and an unfair method of competition" for the purpose of applying the CPA). *See also Lyft*, 406 P.3d at 1155 (holding a violation of RCW 19.190.060 establishes the injury and causation elements of a CPA claim as a matter of law).

CLASS ACTION COMPLAINT 5

**B.    Defendant assists the transmission of commercial marketing texts**

21.    Defendant promotes the sale its products and services through its "Invite Friends" marketing program.

22.    Without an influx of new users generated through its "Invite Friends" program, Cash App's revenue would be adversely impacted. As stated by CashApp in its filings with the Securities and Exchange Commission, "[f]uture revenue growth depends on our ability to retain existing sellers and customers, attract new sellers and customers, and increase sales to both new and existing sellers and customers."[9]

23.    While referred individuals can download the Cash App Mobile App for free, they must link a debit card to their account and then send a "qualifying payment" of at least $5 in order for both the referring user and the referred contact to receive an invitation bonus of $5 that expires within 14 days.[10]

24.    Cash App generates revenue by charging the following fees to users[11]:

| Transaction Type | Fee (per transaction) |
|---|---|
| Paper Money Deposit<br><br>Fee applies to paper money deposits at participating retailers. Check your app for a list of retailers in your area. | $1 (per transaction) |
| Instant Deposit<br><br>Fee for expedited transfer from your Cash App account to a linked account. Funds are typically available within minutes. The applicable fee amount is disclosed at the time of the transaction. | 0.5%-1.75% ($0.25 min) |
| ATM withdrawal - in-network | $2.50 |
| ATM withdrawal - out-of-network | $2.50 |
| Send from credit card | 3% |

25.    Defendant pays its users to recruit additional Cash App users in order to drive revenues. For example, Cash App currently offers a $5 "referral bonus" to both the referring user and the referred contact. Cash App encourages users to send referrals to as many people as possible

---

[9] https://www.sec.gov/ix?doc=/Archives/edgar/data/1512673/000162828023004840/sq-20221231.htm
[10] https://cash.app/help/gb/en-gb/3124-cash-refer-friends
[11] https://cash.app/legal/us/en-us/tos

CLASS ACTION COMPLAINT                    6

1  in order to improve the odds that someone they refer actually signs up, resulting in payment for
2  the referrer.
3      26.    The Cash App Mobile App assists in the transmission of illegal text messages
4  through a series of prompts within the app, starting with the "Invite friends" button depicted below:

**Your Account**                    ✕

**Edit Profile**

⦿  **Add a profile photo**              ❯
    Help people find you

➕  **Invite friends**                   ❯
    Get $5

15     27.    Once a user clicks the foregoing "Invite friends" button, Defendant's App takes
16  them to the page depicted below, where Defendant's App accesses the user's phone contacts and
17  allows the user to search and/or click on their contacts to select individuals to send electronic text
18  messages to through Defendant's referral program:



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

28. The Cash App Mobile App generates electronic messages to be sent to any contacts for which the user clicks the "Get $5" icon displayed below:



29. As soon as the referring user clicks the "Get $5" button above, the Cash App Mobile App generates a text message directed to the contact and automatically fills the message window with its standardized, pre-composed message soliciting the contact to use Cash App's service and containing a hyperlink the contact can click to create a Cash App account:

**New iMessage**          Cancel

To: A.J. Smith

> Hey! I've been using Cash App to send money and spend using the Cash Card. Try it using my code and we'll each get $5. KQKWJSQ https://cash.app/app/KQKWJSQ

30. The pre-composed, pre-addressed text message includes an invitation to join Cash App in exchange for the promise of $5 for both the contact and referring user, and a unique referral link that allows Cash App to identify the sender of the message.

CLASS ACTION COMPLAINT 8

1    31.    All the user has to do is hit send and the message that Defendant composed is sent

2  to the selected contacts.

3    32.    Defendant substantially assists and supports its users in sending illegal text

4  messages by, *inter alia*: a) encouraging and incentivizing its users to send referral messages by

5  compensating them with money; b) technologically enabling its users to initiate referral text

6  messages through the Cash App Mobile App; c) composing the text messages; d) composing and

7  providing unique user-specific referral links that a text recipient can use to sign up for Defendant's

8  services; and e) formulating text to be sent as part of the "Invite friends" text messages.

9    33.    Defendant does not obtain recipients' clear and affirmative consent in advance to

10  receive the referral text messages and consciously avoids knowing whether its users send the

11  commercial marketing text messages without obtaining recipients' clear and affirmative consent

12  in advance to receive the referral text messages.

13    34.    Defendant knows that its users are seeking payment through the "Invite Friends"

14  program for referring Washington residents to Cash App, often by text message. But Defendant

15  knows or consciously avoids knowing whether its users send the commercial marketing text

16  messages without obtaining recipients' clear and affirmative consent in advance to receive the

17  referral text messages.

18    35.    Defendant does not inform its users that they should obtain those recipients' clear

19  and affirmative consent in advance to receive the referral text messages. Nor does Defendant

20  employ any controls from within the app to ensure that its users obtain recipient's clear and

21  affirmative consent in advance to receive the referral text messages before enabling them to send

22  the commercial marketing text messages.

23  **C.    Defendant assisted in the transmission of illegal text messages to Plaintiff**

24    36.    At all times relevant to this Complaint, Plaintiff has resided in Washington State.

25    37.    At all times relevant to this Complaint, Plaintiff has subscribed to a cellular

26  telephone number.

27

28  CLASS ACTION COMPLAINT         9

1    38.    Plaintiff's cellular telephone has the capacity to send and receive transmissions of
2 electronic text messages.

3    39.    On March 22, 2023, Plaintiff received an unsolicited commercial electronic text
4 message inviting her to sign up for Defendant's Cash App services. The text included Cash App's
5 pre-composed, standardized language and contained a link directing Plaintiff to Cash App's app
6 or website to create an account thereon, and stated: "Hey! I've been using Cash App to send money
7 and spend using the Cash Card. Try it using my code and you'll get $5. FVRJ1PH."

8    40.    Below is a screenshot of the text Plaintiff received:

9                    Wednesday, Mar 22 • 12:40 AM



Hey! I've been
using Cash App
to send money
and spend
using the Cash
Card. Try it
using my code
and you'll get
$5. FVRJ1PH
https://cash
.app/app
/FVRJ



20    41.    Plaintiff did not provide clear and affirmative consent in advance to receive the text
21 message above.

22    42.    Plaintiff has received additional text messages inviting her to join Cash App before
23 she received the message above. Plaintiff did not provide clear and affirmative consent in advance
24 to receive any of the additional text messages. For at least one of the additional messages, Plaintiff
25 did not know who the sender was. Plaintiff deleted the spam messages to conserve space on her
26 phone.

27

28    CLASS ACTION COMPLAINT                    10          TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    43.    Plaintiff's privacy was invaded by the text messages she received promoting

2  Defendant's products and services. Plaintiff did not understand why she was receiving annoying

3  and harassing spam texts, which are a nuisance.

4                    **V.    CLASS ACTION ALLEGATIONS**

5    44.    <u>Class Definition</u>. Pursuant to Federal Rule of Civil Procedure 23(b)(3), Plaintiff

6  brings this case as a class action on behalf of a Class defined as:

7            All persons[12]:

8            1) to whose telephone number Defendant assisted in the
                transmission of one or more commercial electronic text
9                messages as part of its referral program from September 8, 2019
                through the date the Court certifies the Class;
10

11           2) where such message was sent while such person was a
                Washington resident; and
12
             3) while the number to which the message was sent was assigned
13               for cellular phone or pager service that is equipped with short
                message capability or any similar capability allowing the
14               transmission of text messages.

15    Excluded from the Class are Defendant, any entity in which Defendant has a controlling

16 interest or that has a controlling interest in Defendant, and Defendant's legal representatives,

17 assignees, and successors. Also excluded are the judge to whom this case is assigned and any

18 member of the judge's immediate family.

19    45.    <u>Numerosity</u>. The Class is so numerous that joinder of all members is impracticable.

20 The Class has more than 1,000 members. Moreover, the disposition of the claims of the Class in a

21 single action will provide substantial benefits to all parties and the Court.

22    46.    <u>Commonality</u>. There are numerous questions of law and fact common to Plaintiff

23 and members of the Class. The common questions of law and fact include, but are not limited to:

24          a.    Whether Defendant assisted the transmission of commercial electronic text

25 messages to recipients residing in Washington State in violation of RCW 19.190.060;

26

27 _____
[12] As that term is defined in RCW 19.190.010(11) and RCW 19.86.010(a).

28  CLASS ACTION COMPLAINT            11            TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1                b.      Whether a violation of RCW 19.190.060 establishes all the elements of a

2 claim under Washington's Consumer Protection Act, RCW 19.86 *et seq*.;

3                c.      Whether Plaintiff and the proposed Class are entitled to an injunction

4 enjoining Defendant from sending the unlawful texts in the future; and

5                d.      The nature and extent of Class-wide injury and damages.

6     47.    Typicality. Plaintiff's claims are typical of the claims of the Class. Plaintiff's

7 claims, like the claims of the Class arise out of the same common course of conduct by Defendant

8 and are based on the same legal and remedial theories.

9     48.    Adequacy. Plaintiff will fairly and adequately protect the interests of the Class.

10 Plaintiff has retained competent and capable attorneys with significant experience in complex and

11 class action litigation, including consumer class actions and class actions involving unlawful text

12 messages under Washington law. Plaintiff and her counsel are committed to prosecuting this action

13 vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor

14 their counsel have interests that are contrary to or that conflict with those of the proposed Class.

15     49.    Predominance. Defendant has a standard practice of assisting the transmission of

16 commercial electronic text messages to subscribers of cellular telephone numbers residing in

17 Washington State. The common issues arising from this conduct predominate over any individual

18 issues. Adjudication of these issues in a single action has important and desirable advantages of

19 judicial economy.

20     50.    Superiority. Plaintiff and members of the Class have been injured by Defendant's

21 unlawful conduct. Absent a class action, however, most Class members likely would find the cost

22 of litigating their claims prohibitive. Class treatment is superior to multiple individual suits or

23 piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency

24 of adjudication, provides a forum for small claimants, and deters illegal activities. The members

25 of the Class are readily identifiable from Defendant's records and there will be no significant

26 difficulty in the management of this case as a class action.

27     51.    Injunctive Relief. Defendant's conduct is uniform as to all members of the Class.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1 | Defendant has acted or refused to act on grounds that apply generally to the Class, so that final
2 | injunctive relief or declaratory relief is appropriate with respect to the Class as a whole. Plaintiff
3 | further alleges, on information and belief, that the texts described in this Complaint are
4 | substantially likely to continue in the future if an injunction is not entered.

**VI.    CAUSES OF ACTION**

**FIRST CLAIM FOR RELIEF**

**(Violations of Washington's Commercial Electronic Mail Act, RCW 19.190 *et seq*.)**

52.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

53.    Washington's CEMA prohibits any "person," as that term is defined in RCW 19.190.010(11), from initiating or assisting the transmission of an unsolicited commercial electronic text message to a Washington resident's cellular telephone or similar device.

54.    Defendant is a "person" within the meaning of the CEMA, RCW 19.190.010(11).

55.    Defendant assisted the transmission of one or more commercial electronic text messages to Plaintiff and proposed Class members.

56.    Defendant's acts and omissions violated RCW 19.190.060(1).

57.    Defendant's acts and omissions injured Plaintiff and proposed Class members.

58.    Plaintiff and Class members are therefore entitled to injunctive relief in the form of an order enjoining further violations of RCW 19.190.060(1).

**SECOND CLAIM FOR RELIEF**

**(*Per se* violation of Washington's Consumer Protection Act, RCW 19.86 *et seq*.)**

59.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

60.    Plaintiff and Class members are "persons" within the meaning of the CPA, RCW 19.86.010(1).

61.    Defendant violated the CEMA by assisting in the transmission of an unsolicited commercial electronic text message to Plaintiff and Class members' cellular telephone or similar

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  devices.

2      62.    A violation of the CEMA establishes all five elements of Washington's Consumer
3  Protection Act as a matter of law. RCW 19.190.100 & *Lyft*, 406 P.3d at 1155.

4      63.    Defendant's violations of the CEMA are unfair or deceptive acts or practices that
5  occur in trade or commerce under the CPA. RCW 19.190.100.

6      64.    Defendant's unfair or deceptive acts or practices vitally affect the public interest
7  and thus impact the public interest for purposes of applying the CPA. RCW 19.190.100.

8      65.    Pursuant to RCW 19.19.040(1), damages to each recipient of a commercial
9  electronic text message sent in violation of the CEMA are the greater of $500 for each such
10 message or actual damages, which establishes the injury and causation elements of a CPA claim
11 as a matter of law. *Lyft*, 406 P.3d at 1155.

12     66.    Defendant engaged in a pattern and practice of violating the CEMA. As a result of
13 Defendant's acts and omissions, Plaintiff and Class members have sustained damages, including
14 $500 in statutory damages, for each and every text that violates the CEMA. The full amount of
15 damages will be proven at trial. Plaintiff and Class members are entitled to recover actual damages
16 and treble damages, together with reasonable attorneys' fees and costs, pursuant to RCW
17 19.86.090.

18     67.    Under the CPA, Plaintiff and members of the Class are also entitled to, and do seek,
19 injunctive relief prohibiting Defendant from violating the CPA in the future.

20                    **VII.    REQUEST FOR RELIEF**

21     WHEREFORE, Plaintiff, on her own behalf and on behalf of the members of the Class,
22 request judgment against Defendant as follows:

23     A.    That the Court certify the proposed Class;

24     B.    That the Court appoint Plaintiff as Class Representative.

25     C.    That the Court appoint the undersigned counsel as counsel for the Class;

26

27

28  CLASS ACTION COMPLAINT                    14              TERRELL MARSHALL LAW GROUP PLLC
                                                              936 North 34th Street, Suite 300
                                                              Seattle, Washington 98103-8869
                                                              TEL. 206.816.6603 • FAX 206.319.5450
                                                              www.terrellmarshall.com

D. That the Court should grant declaratory, equitable, and/or injunctive relief as permitted by law to ensure that Defendant will not continue to engage in the unlawful conduct described in this Complaint;

E. That, should the Court permit Defendant to engage in or rely on spam texting, it enter a judgment requiring them to adopt measures to ensure CEMA compliance, and that the Court retain jurisdiction for a period of at least six months to ensure that Defendant complies with those measures;

F. That the Court enter a judgment awarding any other injunctive relief necessary to ensure Defendant's compliance with the CEMA;

G. That Defendant be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify members of the Class;

H. That Plaintiff and all Class members be awarded statutory damages in the amount of $500 for each violation of the CEMA pursuant to RCW 19.190.040(1) and treble damages pursuant to RCW 19.86.090;

I. That the Court enter an order awarding Plaintiff reasonable attorneys' fees and costs; and

J. That Plaintiff and all Class members be granted other relief as is just and equitable under the circumstances.

## VIII. TRIAL BY JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this 13th day of November, 2023.

TERRELL MARSHALL LAW GROUP PLLC

By: */s/ Beth E. Terrell*
*/s/ Jennifer Rust Murray*
Beth E. Terrell, WSBA #26759
Email: bterrell@terrellmarshall.com
Jennifer Rust Murray, WSBA #36983
Email: jmurray@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103

CLASS ACTION COMPLAINT                    15

Telephone: (206) 816-6603

BERGER MONTAGUE PC

E. Michelle Drake, *Pro Hac Vice Forthcoming*
Email: emdrake@bm.net
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Telephone: (612) 594-5933

Mark B. DeSanto, *Pro Hac Vice Forthcoming*
Email: mdesanto@bm,net
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3046

Sophia M. Rios, *Pro Hac Vice Forthcoming*
Email: srios@bm.net
401 B Street, Suite 2000
San Diego, California 92101
Telephone: (619) 489-0300

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT

16