UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KIMBERLY BOTTOMS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BLOCK, INC. (F/K/A, SQUARE, INC.) (D/B/A, CASH APP),<br><br>Defendant. | CASE NO. 23-1969 MJP<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

This matter comes before the Court on Defendant's Motion to Dismiss. (Dkt. No. 12.) Having reviewed the Motion, Plaintiff's Response (Dkt. No. 15), the Reply (Dkt. No. 16), and all other supporting material, the Court DENIES the Motion.

**BACKGROUND**

Defendant Block, Inc ("Block"), is a company that offers electronic financial services through a platform called Cash App. (Compl. ¶ 1 (Dkt. No. 1-2).) Cash App allows users to send and receive money at no cost, but charges for additional services such as fees for credit card

transactions, atm withdrawals, and immediate transfer of funds. (Id.) To promote its services, Block created a marketing campaign called "Invite Friends" wherein Cash App users can refer their contacts to Cash App and both the existing user, and the referred contact receive $5 once the referred individual signs up for Cash App and makes a qualifying payment. (Id. at ¶ 2.) To do this, users can go to the Cash App mobile app where there is an "'Invite Friends' button." (Id. at ¶ 26.) Once a user clicks the "'Invite Friends' button," the Cash App takes users to a page where the app can access the user's phone contacts and allow the user to search for contacts to select an individual to send the "Invite Friends" text to. (Id. at ¶ 27.) Once a contact is selected, the user just needs to tap a "Get $5" icon displayed on the mobile app. (Id. at ¶ 28.) Once the icon is selected, the Cash App mobile app generates a text message to the contact with a standardized, pre-composed message soliciting the contact to use the Cash App's service and containing a hyperlink the contact can click to create a Cash App account. (Id. at ¶ 29.) Though the user may alter or change the pre-composed message to personalize it, they need not do so – all the user has to do is hit send and the Cash App pre-composed message will be sent to the selected contacts. (Id. at ¶ 31.)

      Plaintiff Kimberly Bottoms ("Bottoms") received unsolicited text messages inviting her to sign up for Block's Cash App services. (Comp. ¶ 39.) The text included Cash App's pre-composed, standardized language and contained a link directing Bottoms to Cash App's mobile app or website to create an account. (Id.) The parties do not dispute that Cash App did not send the text messages to Bottoms; rather an individual using Cash App who had Bottoms' cellphone number sent her the text messages. (Mot. at 1.) Regardless, Bottoms alleges Block violated the Washington Consumer Electronic Mail Act ("CEMA"), RCW 19.190.010 et seq., which makes it illegal for a person to "initiate or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service . . ." RCW

ORDER DENYING DEFENDANT'S MOTION TO DISMISS - 2

19.190.060. Bottoms alleges that Block substantially assists its user in sending texts in violation of CEMA by (1) encouraging and incentivizing users to send referral messages by compensating them with money; (2) technologically enabling its users to initiate text messages through its Cash App mobile app; (3) providing precomposed text messages; and (4) composing and providing unique user-specific referral links. (Compl. ¶ 32.) Block now moves to dismiss Bottoms' claims, which Bottoms opposes.

## ANALYSIS

**A.     Legal Standard**

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Dismissal is appropriate only where a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The court must accept all facts alleged in the complaint as true and make all inferences in the light most favorable to the non-moving party. In re Fitness Holdings, Int'l, Inc., 714 F.3d 1141, 1144-45 (9th Cir. 2013). But "conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper motion to dismiss." Vasquez v. Los Angeles Cnty., 487 F.3d 1246, 1249 (9th Cir. 2007).

B.     The Commercial Electronic Mail Act

CEMA, RCW 19.190.010 et seq., was originally enacted in 1998 to deal with unwanted commercial email messages. "In 2003, the Washington legislature, recognizing the "serious concerns" posed by the increase in unsolicited commercial text messages, amended CEMA to expand its scope of prohibited electronic practices to include the initiation and facilitation of commercial text messages." Moore v. Robinhood Fin. LLC, No. 2:21-CV-01571-BJR, 2022 WL 3082969, at *2 (W.D. Wash. Aug. 3, 2022) (citing 2003 Wash. Legis. Serv. Ch. 137 § 1). "The provisions introduced by the 2003 amendment were thus designed to limit the practice of sending unsolicited commercial text messages to cellular telephone or pager numbers in Washington." (Id.) (internal citation and quotation omitted). CEMA does not create a private right of action, but instead makes a violation of CEMA "an unfair or deceptive act in trade or commerce and an unfair method of competition for the purposes of applying the consumer protection act." RCW 19.190.060(2). Thus, "a violation of the Consumer Protection Act occurs when a sender" sends a message in violation of CEMA." Wash. Final Bill Rep., 1998 Reg. Sess. H.B. 2752 (April 6, 1998).

Block argues Bottoms' Complaint fails for four reasons. First, Bottoms fails to allege that Block provided "substantial assistance" to the Cash App users who sent text messages to her as required by the statute. (Mot. at 1.) Second, Bottoms fails to allege the Block knew or consciously avoided knowing the Cash Apps users violated the CPA by sending the text messages. (Id. at 1-2.) Third, the Complaint fails because CEMA exempts Block's alleged actions from the definition of activities that assist the transmission. (Id. at 2.) And fourth, the Complaint fails to sufficiently allege the text messages Bottoms received constitute a commercial

electronic text message as defined in the statute. (Id.) The Court addresses each of these arguments in turn.

        1.        <u>Whether Block Provided "Substantial Assistance or Support"</u>

Block contends that because individual Cash App users decide whether or not to send a referral invitation, Bottoms' allegations regarding the role of Cash App's design in sending the text messages are insufficient to state a claim of "substantial assistance" under CEMA. The Court disagrees.

Under CEMA, to demonstrate a defendant assisted in the transmission of a text, a plaintiff must establish that defendant "provide[d] substantial assistance or support which enables any person to formulate, compose, send, originate, initiate, or transmit a commercial electronic mail message or a commercial electronic text message . . ." RCW § 19.190.010(1). Here, Bottoms alleges that Block provided this assistance by (1) paying Cash App users to participate in its referral program; (2) creating the "Invite Friends" feature in the Cash App mobile app, which allows users to easily send "refer-a-friend" texts by clicking on the "Invite Friends" button; (3) prompting users to select individuals from their contacts to send referral texts to; (4) composing the texts for the Cash App users; and (5) automatically opening the users' text messaging application containing the pre-composed and pre-addressed text message." (Opp. at 8-9.) Though CEMA's statutory language does not expound on what suffices as "substantial," the Court finds Bottoms has alleged sufficient facts to state a plausible claim for relief.

Block argues the Court should use the Telephone Consumer Protection Act ("TCPA") as a guide in determining whether its involvement is "substantial." The TCPA is similar to CEMA in that it prohibits unsolicited communications. Block points to the Federal Communications Commission ("FCC") guidance on TCPA liability when a third party makes the call on behalf of

1 an individual or entity, and asks the Court to apply the FCC's guidance here. (Mot. at 6-7.)
2 While the Court acknowledges that FCC guidance on TCPA can be helpful when interpreting
3 CEMA, the TCPA is inapplicable here. This is because there is no liability under the TCPA for
4 "assisting" in a call. Instead, the TCPA requires the entity to be the one who placed the
5 unsolicited call, or be so involved in placing the call as to be deemed to have initiated it. In the
6 Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd.
7 7980 (2015). In contrast, under CEMA an entity does not need to send the text message, but may
8 be liable for assisting in the transmission of the message. And because Bottoms does not claim
9 that Block "initiated" the messages at issues, but only "assisted" in their transmission, the Court
10 need not determine whether Block was so involved that it can be "deemed to have made" them.

11    Block also references two CEMA cases to distinguish when courts have found sufficient
12 allegations of substantial assistance and when courts have not. Block argues this case is similar
13 to Frank v. Cannabis & Glass, LLC, 2019 WL 4855378 (E.D. Wash. Oct. 1, 2019), where the
14 court dismissed the complaint for failure to allege that defendant substantially assisted in the
15 transmission of text messages. In Frank, the defendant's software application allowed retail
16 stores to send text messages to plaintiff. 2019 WL 4855378 at *1. The court found plaintiff
17 alleged facts to suggest defendant provided some form of assistance, but plaintiff failed to
18 suggest defendant provided substantial assistance. Id. at *3. In contrast, the other case cited by
19 Block – Wright v. Lyft, Inc., 2016 WL 7971290 (W.D. Wash. Apr. 15, 2016) involved the
20 rideshare company Lyft's "invite friends" promotion on its mobile application. This Court held
21 that plaintiff sufficiently alleged substantial assistance because the allegations established "a
22 chain of events wherein [d]efendant "assisted" with the transmission of the invitational text . . ."

1  2016 WL 797120 at *4. Block asks the Court to find the facts here more analogous to Frank than
2  to Wright.

3  Critically, Block's counsel made these exact same arguments previously in Moore. In
4  Moore, defendant ran an online investment platform where users could invest in stocks and other
5  securities. 2022 WL 3082969 at * 1. Defendant's application was free, but it also offered users a
6  premium subscription-based service for a fee. Id. Defendant similarly promoted it services
7  through its "Refer a Friend" program, by which users can use the app to generate and send text
8  messages to their phone contacts inviting them to join. Id. Once the new user joins, both that
9  individual and the referring user are credited $5 or a randomly selected stock worth anywhere
10 from $2.50 to $225. Id. In asking the court to dismiss the complaint, defendant argued the facts
11 are similar to Frank and distinguishable from Wright. The Honorable Judge Rothstein in this
12 District analyzed both cases and found the facts more closely resemble Wright than Frank. Id. at
13 4. Judge Rothstein reasoned that similar to Wright, the defendant "developed and ordered the
14 entire 'chain of events' leading to the messages' formulation and transmission. Id. (quoting
15 Wright, 2016 WL 7971290 at *4.) And whether or not the users had full control over the final
16 messages is immaterial because plaintiff did not allege defendant "initiated" the messages, only
17 that defendant provided "substantial assistance or support" to its users in formulating,
18 composing, sending originating, initiating, or transmitting the messages. Id. Because the
19 complaint adequately alleges substantial assistance via the "Refer a Friend" program process,
20 defendant's motion to dismiss failed. Id.

21 The Court agrees with Judge Rothstein's reasoning in Moore. The facts in Moore as
22 compared to here are substantially similar, as are counsel's arguments. The Court finds the case
23 is more similar to Wright than Frank, because unlike Frank, Block did not just create a software
24

application that other businesses could utilize to send messages. Rather, Block created the Cash App, the referral program, created the software that allowed users to select contacts to send the referral to, the application could access users' messaging application, and created a pre-composed message that users could use. This process creates easy steps for users to follow in order for the referral message to be sent. The Court finds Bottoms has sufficiently alleged Block provided substantial assistance.

        2.      <u>Whether Block Knew or Consciously Avoided Knowing Users were Sending Messages in Violation of the CPA</u>

Block next argues that Bottoms fails to allege that it knew or consciously avoided knowing that the senders of the text messages engaged or intended to in engage in a practice that violates the CPA. (Mot. at 9-10.) Because Bock's argument is based on a misinterpretation of the statute, the Court finds Block argument here fails.

RCW § 19.190.060 states "[n]o person conducting business in the state may initiate or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service that is equipped with short message capability or any similar capability allowing the transmission of text messages." RCW § 190.010(1) defines assisting in the transmission as "actions taken by a person to provide substantial assistance or support which enables any person to formulate, compose, send, originate initiate, or transmit a commercial electronic mail message or a commercial electronic text message when the person providing the assistance knows or consciously avoids knowing that the initiator of the commercial electronic mail message or the commercial electronic text message is engaged, or intends to engage, in any practice that violates the consumer protection act."

ORDER DENYING DEFENDANT'S MOTION TO DISMISS - 8

1       Block argues that CEMA requires the sender of the text message to be a person

2 conducting business in the state. (Mot. at 11.) But this argument relies on a misinterpretation of

3 the statute. Block argues RCW § 19.190.060 states: "No person **conducting business in the state**

4 may *initiate* . . . the transmission of an electronic commercial text message …" (Mot. at 11.)

5 (emphasis in original). Block's argument conveniently ignores that a business may be liable for

6 <u>assisting in the transmission</u> of a commercial text message, which is Bottoms' premise for

7 liability. The statutes at issue are clear. RCW § 19.190.060 prohibits the sending or assisting in

8 the sending of unsolicited commercial messages. The prohibition of sending a commercial text or

9 assisting in the transmission of the text refers to the entity conducting business in the state. Put

10 another way, no entity conducting business in Washington may assist a third party in sending

11 unsolicited commercial text messages. The statute is silent about any requirements or limitations

12 on the third party being assisted with the transmissions. RCW § 190.010(1) defines assisting in

13 the transmission, and does speak to the third party being assisted – all the prohibitory language

14 refers to the entity assisting in the transmission of the messages. All that is required of the

15 initiator of the text is that their actions be in violation of the CPA. The statute does not even

16 require a mens rea element for the third party, and instead places the impetus of knowledge on

17 the entity assisting in the text.

18       Block points out that Washington lawmakers intended to prohibit businesses in

19 Washington from sending unsolicited text messages. (Mot. at 10.) But Block's reference to

20 legislative intent does not aide it here. This is because Block is incorrect that an essential element

21 of CEMA is that the users initiating the text must conduct business in Washington. Again, a plain

22 reading of the statute does not require the individual sending the message to conduct business in

23 the state if that individual is assisted by an entity conducting business in the state. And though

24

ORDER DENYING DEFENDANT'S MOTION TO DISMISS - 9

the Court need not get to legislative intent because the statute is clear, it nevertheless should be noted that if the Washington legislative wished to carve out an exception for business when third parties send text messages, it would never have created liability for entities that assist in the sending of commercial messages. This reading is consistent with CEMA's 2003 amendment and the Washington Supreme Court's directive to "construe remedial consumer protection statutes . . . liberally in favor of the consumers they aim to protect." Jametsky v. Olsen, 179 Wn.2d 756, 765 (2014).

The Court finds Bottoms sufficiently alleged that Block conducts business in the state and assisted Cash App users in the transmission of commercial text messages.

        3.      <u>Whether Block's Activities are Excluded Under CEMA</u>

Block next argues that its activities are expressly excluded from the definition of "assist the transmission" under CEMA, and therefore it cannot be liable for assisting users in the transmission of text messages. Block's arguments are unavailing.

There are two activities that are excluded from the definition of "assist the transmission." First, "assist the transmission" does not include "[a]ctivities of an electronic mail service provider or other entity who provides intermediary transmission service in sending or receiving electronic mail, or provides to users of electronic mail services the ability to send, receive or compose electronic mail[.]" The second exception is for "[a]ctivities of an entity related to the design, manufacture, or distribution of any technology, product, or component that has a commercially significant use other than to violate or circumvent this section." Block asserts the Cash App falls within the second exception because the application has commercially significant uses unrelated to the circumvention or violation of CEMA. (Mot. at 13.)

1       Block's contention that the Cash App falls within the second exclusion is misguided.
2  Bottoms' allegations are not against Cash App as a whole, but rather its activities around the
3  "Invite Friends" aspect of the application. (Compl. ¶ 32.) ("Defendant substantially assists and
4  supports it suers in sending illegal text messages by, <u>inter alia,</u> . . . technologically enabling its
5  users to initiate referral text messages through the Cash App Mobile App . . ."). Block
6  acknowledges Bottoms' theory of liability but nevertheless contends that because Block's Cash
7  App has commercially significant uses it is excluded from assistance liability under RCW §
8  19.190.010(1). But the statute does not create an exemption for a business that has commercially
9  significant uses generally; but rather pertains to the "activities" of a business – of which Block
10 has many. The one at issue here is Block's "Invite Friends" marketing activities. Were the Court
11 to apply Block's broad reading of the exemption almost every business would be excluded from
12 liability because most businesses serve a purpose other than to violate CEMA. Because Bottoms'
13 allegations refer to Block's "Invite Friends" activities, the Court finds the exemption does not
14 apply.

15           4.       <u>Whether the Text Messages Constitute a Commercial Electronic Text Message</u>

16       Block's final argument is that the text messages do not constitute "commercial electronic
17 text messages" under CEMA because they do not promote real property, goods, or services for
18 sale or lease as required under the statute. The Court disagrees with Block.

19       The term "commercial" in the context of CEMA, means the text messages were "sent to
20 promote real property, goods, or services for sale or lease." RCW § 19.190.010(5). Block argues
21 that the text Bottoms received invites her to try the Cash App and receive a $5 discount. (Mot. at
22 14.) Because Bottoms does not allege that Cash App users pay any money to try the app, the
23 message does not promote any services for "sale or lease." (<u>Id.</u> at 15.)

24

ORDER DENYING DEFENDANT'S MOTION TO DISMISS - 11

1    The Court previously dealt with a similar argument in <u>Wright</u>. In <u>Wright</u>, plaintiff
2    received a text message offering a $25 ride credit from the Lyft app. Defendant argued that,
3    because the $25 credit and the Lyft app itself are free, the text message does not "promote real
4    property, goods, or services for sale or lease." <u>Id.</u> at *5. This Court found defendants argument to
5    be "too narrow reading of the statute" and contrary to the intent behind CEMA. <u>Id.</u> The Court's
6    reasoning followed the analysis of <u>Gragg v. Orange Cab Co.</u>, No. C12-0576 RSL, 2013 WL
7    195466 at *4 (W.D. Wash. Jan. 17, 2013), where the Honorable Judge Lasnik from this District
8    analyzed a similar invitational offer and found the purpose of the invitational offer "was to
9    promote or encourage the use of defendants' taxi services." <u>Moore</u>, too, dealt with this same
10   argument by defense counsel and similarly followed the rationale in <u>Wright</u> and <u>Gragg</u>. In
11   <u>Moore</u>, Judge Rothstein found it "sufficient under CEMA that the message be designed to
12   promote, or otherwise have the purpose of promoting, future sales of some good or service."
13   2022 WL 3082969 at * 5. As these cases are factually similar to the facts here, the Court is
14   inclined to follow the precedent set by these cases. Because the message encouraged individuals
15   to use Cash App, which offers free services and services as a cost, the Court finds Block's
16   argument fail.

17    Block argues the facts here are more akin to <u>Hickey v. Voxernet LLC</u>, 887 F. Supp. 2d
18   1125 (W.D. Wash. 2012) than the cases above. The Court disagrees. <u>Hickey</u> involved a software
19   application that transformed users' cellphones into walkie-talkies. 887 F. Supp. 2d at 1128. This
20   Court determined that defendant's text telling plaintiff to "Get on Voxer" and providing a link
21   for plaintiff to download the app was not a "commercial electronic message" for the purposes of
22   CEMA because the download was free, and plaintiff failed to allege that consumers pay any
23   money for Voxer. <u>Id.</u> at 1132. Unlike the facts alleged here, in <u>Hickey</u>, plaintiff alleged
24

consumers gave intangible considerations such as personal information, telephone data charges and an agreement to pay Voxer <u>if</u> it decided to charge users in the future. 887 F. Supp. 2d at 1132. Plaintiff did not allege that users paid for any aspect of the application. Here, there is no dispute that it is free to download Cash App. But Bottoms alleges that, while individuals can download the app for free, the Cash App generates revenue by charging fees for "paper money deposit," "instant deposit," atm withdrawals, and credit card transactions. (Compl. ¶ 24.) These services are not of the intangible nature that were proffered in <u>Hickey</u>; rather, these are concrete services that Block offers in order to generate revenue. And Bottoms alleges that Block uses the "Invite Friends' referral program as a way to market their services. Accordingly, the Court finds Bottoms has sufficiently alleged the text messages received were "commercial electronic text messages."

## CONCLUSION

The Court finds Bottoms has alleged sufficient facts to support a plausible claim for relief under CEMA. Because Block fails to demonstrate that there is a basis to dismiss the claims against it, the Court DENIES its Motion to Dismiss.

The clerk is ordered to provide copies of this order to all counsel.

Dated May 2, 2024.

Marsha J. Pechman
United States Senior District Judge