UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KIMBERLY BOTTOMS, on behalf of
herself and all others similarly situated,

            Plaintiff,

   and

STATE OF WASHINGTON,

            Plaintiff-Intervenor,

   v.

BLOCK, INC. (F/K/A, SQUARE, INC.)
(D/B/A, CASH APP),

            Defendant.

NO. 2:23-cv-1969-MJP

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................................. 1

II.   BACKGROUND.................................................................................................. 1

III.  ARGUMENT ....................................................................................................... 2

      A.   The U.S. Supreme Court Rejected Block's Extraterritoriality Argument in
           2023 ............................................................................................................. 2

           1.   State statutes may have extraterritorial effect without offending the
                Constitution ........................................................................................ 2

           2.   The other cases on which Block relies were decided before *National Pork
                Producers* clarified *Healy* .................................................................. 5

      B.   CEMA Does Not Violate the Dormant Commerce Clause ....................... 7

           1.   Block's facial challenge to CEMA fails *ab initio* .............................. 8

           2.   Block does not allege and cannot establish discrimination under the
                dormant Commerce Clause .................................................................. 10

           3.   Block does not allege and cannot establish a significant burden on
                interstate commerce............................................................................. 12

           4.   Even under *Pike*, CEMA is constitutional ....................................... 13

      C.   Washington's Policy of Limiting Unsolicited Commercial Text Messages is
           Constitutional............................................................................................. 15

IV.   CONCLUSION ................................................................................................. 17

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - i

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Ass'n des Éleveurs de Canards et d'Oies du Québec v. Harris*,
729 F.3d 937 (9th Cir. 2013) ........................................................................ 8

*Black Star Farms LLC v. Oliver*,
600 F.3d 1225 (9th Cir. 2010) ...................................................................... 11

*Booth v. Appstack, Inc.*,
No. C13-1533JLR, 2015 WL 1466247 (W.D. Wash. Mar. 30, 2015) .................. 5

*Brown & Williamson Tobacco Corp. v. Pataki*,
320 F.3d 200 (2d Cir. 2003) .......................................................................... 13

*Carmickle v. Comm'r, Soc. Sec. Admin.*,
533 F.3d 1155 (9th Cir. 2003) ................................................................ 7, 11

*Chinatown Neighborhood Ass'n v. Harris*,
794 F.3d 1136 (9th Cir. 2015) ...................................................................... 13

*City of Philadelphia v. New Jersey*,
437 U.S. 617 (1978) ...................................................................................... 11

*Conway v. Taylor's Ex'r*,
66 U.S. 603 (1861) ........................................................................................ 8

*Destination Ventures, Ltd. v. F.C.C.*,
46 F.3d 54 (9th Cir. 1995) ............................................................................ 16

*Edgar v. MITE Corp.*,
457 U.S. 624 (1982) ....................................................................................... 5

*Gen. Motors Corp. v. Tracy*,
519 U.S. 278 (1997) ...................................................................................... 11

*Hartman v. United Bank Card, Inc.*,
291 F.R.D 591 (W.D. Wash. 2013) ................................................................. 5

*Healy v. Beer Institute, Inc.*,
491 U.S. 324 (1989) ........................................................................... 2, 3, 4, 5

*Heft v. Moore*,
351 F.3d 278 (7th Cir. 2003) ........................................................................ 11

*In re Park W. Galleries, Inc.*,
No. MDL 09-2076RSL, 2010 WL 56044 (W.D. Wash. Jan. 5, 2010) ................. 15

*Int'l Franchise Ass'n, Inc. v. City of Seattle*,
803 F.3d 389 (9th Cir. 2015) .......................................................................... 8

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - ii

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*Kleenwell Biohazard Waste & Gen. Ecology Consultants, Inc. v. Nelson,*
  48 F.3d 391 (9th Cir. 1995) ...................................................................... 12

*Minnesota v. Clover Leaf Creamery Co.,*
  449 U.S. 456 (1981) .................................................................................. 14

*Mitchell v. Atkins,*
  483 F. Supp. 3d 985 (W.D. Wash. 2020) ................................................. 11

*Mitchell v. Atkins,*
  No. 20-35827, 2022 WL 17420766 (9th Cir. Dec. 2, 2022)..................... 11

*Nat'l Ass'n of Optometrists & Opticians v. Harris,*
  682 F.3d 1144 (9th Cir. 2012) ............................................................. 8, 14

*National Pork Producers Council v. Ross,*
  598 U.S. 356 (2023) ............................................. 2, 3, 4, 5, 6, 7, 8, 11

*Ohralik v. Ohio State Bar Ass'n,*
  436 U.S. 447 (1978) .................................................................................. 14

*Oregon Waste Sys., Inc. v. Dep't of Env't Quality of State of Or.,*
  511 U.S. 93 (2014) .................................................................................... 10

*Panag v. Farmers Inc. Co. of Wash.,*
  166 Wash. 2d 27, 204 P.3d 885 (2009) ................................................... 16

*Phillips Petroleum Co. v. Shutts,*
  472 U.S. 797 (1985) .................................................................................... 4

*Pike v. Bruce Church, Inc.,*
  397 U.S. 137 (1970) ............................................................................ 10, 14

*Rocky Mtn. Farmers Union v. Corey,*
  730 F.3d 1070 (9th Cir. 2013) ................................................................. 10

*Rosenblatt v. City of Santa Monica,*
  940 F.3d 439 (9th Cir. 2019), *cert. denied,* 140 S.Ct. 2762 (2020)............... 12, 13

*S.D. Myers, Inc. v. City & Cnty. of San Francisco,*
  253 F.3d 461 (9th Cir. 2001) ..................................................................... 9

*Spoklie v. Montana,*
  411 F.3d 1051 (9th Cir. 2005) ................................................................. 12

*State v. Heckel,*
  143 Wash. 2d 824 (2001), *cert. denied,* 534 U.S. 997 (2001)................... 12, 13, 16

*Strassheim v. Daily,*
  221 U.S. 280 (1911) .................................................................................... 5

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - iii

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*Sullivan v. Oracle Corp.*,
    662 F.3d 1265 (9th Cir. 2011) .................................................................. 10, 12

*Taylor v. Universal Auto Group I, Inc.*,
    No. 3:13-CV-05245-KLS, 2014 WL 6654270 (W.D. Wash. Nov. 24, 2014) ....................... 5

*TelTech Sys., Inc. v. Barbour*,
    866 F. Supp. 2d 571 (S.D. Miss. 2011) ..................................................... 5

*TelTech Sys., Inc. v. Bryant*,
    702 F.3d 232 (5th Cir. 2012) ............................................................. 6

*TelTech Sys., Inc. v. McCollum*,
    No. 08-61664-CIV, 2009 WL 10626585 (S.D. Fla. July 16, 2009) ........................... 5

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas*,
    588 U.S. 504 (2019) ...................................................................... 7

*Thomas v. Newport Beach Auto. Grp., LLC*,
    No. 8:24-CV-00030-JLS-KES, 2024 WL 4002839 (C.D. Cal. July 29, 2024) ................... 11

*Truesdell v. Friedlander*,
    80 F.4th 762, 774 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 1344 (2024), *and cert.
    denied*, 144 S. Ct. 1346 (2024) ........................................................ 13

*United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*,
    550 U.S. 330 (2007) ..................................................................... 10

*United Res. Sys., Inc. v. Wilson*,
    614 F. Supp. 3d 243 (D.S.C. 2022) ..................................................... 3, 5

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*,
    471 U.S. 626 (1985) ..................................................................... 15

**Statutes**

Cal. Civ. Code § 1798.140 (West) ............................................................ 7

Conn. Gen. Stat. § 42-284(7) ................................................................ 6

Conn. Gen. Stat. § 42-288a .................................................................. 15

Fla. Stat. § 501.059(5) ..................................................................... 15

Fla. Stat. § 501.059(8)(d) .................................................................. 7

Ind. Code § 24-4.7-2-9 ...................................................................... 15

N.J. Stat. Ann. § 2A:65D-2 .................................................................. 15

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - iv

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Okla. Stat. Title 15, § 775C.3 ............................................................................... 15

Va. Code Ann. § 59.1-514 ..................................................................................... 15

Wash. Rev. Code § 19.190.060 ............................................................................... 1

Wash. Rev. Code § 19.190.060(2) ......................................................................... 14

Wash. Rev. Code § 19.190.070 ............................................................................... 1

Wash. Rev. Code § 19.190.100 ............................................................................. 15

Wash. Rev. Code § 19.86 ...................................................................................... 15

Wash. Rev. Code § 19.86.010(2) .......................................................................... 16

Wash. Rev. Code § 19.86.020 ............................................................................... 15

Wis. Admin. Code § ATCP 127.82 ....................................................................... 15

**Other Authorities**

Block Inc., Yahoo Finance Quote (last checked Jan. 17, 2025) ................................ 6

Block, Inc.'s 2024 Form 10-Q (Sept. 30, 2024) ...................................................... 6

Substitute House Bill 2007, 58th Leg., Reg. Sess. (Wash. 2003) ....................... 1, 14

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 3 .................................................................................... 7

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - v

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# I. INTRODUCTION

Washington's Commercial Electronic Mail Act (CEMA) is constitutional. The statute protects Washington residents from unwanted commercial text messages. The statute does not discriminate against out-of-state interests, and Defendant Block, Inc. does not even attempt to argue that it does. While CEMA's protection may, at times, have a practical effect on people or companies outside Washington, that occasional extraterritorial impact does not offend the United States Constitution. Block's argument to the contrary completely misunderstands federal constitutional law and the operation of the interconnected modern economy. Perhaps more importantly, Block also fails to acknowledge the recent U.S. Supreme Court case that expressly—and unanimously—rejected Block's argument. This Court must follow that precedent and uphold CEMA.

# II. BACKGROUND

In 2003, the Washington State Legislature broadened the scope of CEMA—which already governed commercial emails sent to Washington residents—to prohibit the initiation of any unsolicited commercial text message to Washington residents. Wash. Rev. Code § 19.190.070. The intent of the amendment was to "limit the practice of sending unsolicited commercial text messages to cellular telephone or pager numbers in Washington." Wash. Rev. Code § 19.190.060; Substitute House Bill 2007, 58th Leg., Reg. Sess., at 1 (Wash. 2003). The Legislature recognized that the number of unsolicited commercial text messages was increasing and raising concerns for cellular telephone subscribers. *Id.*

Block moved for summary judgment arguing, among other things, that CEMA is an unconstitutional violation of the dormant Commerce Clause. Dkt. No. 40. This Court certified Block's constitutional challenge pursuant to Federal Rule of Civil Procedure 5.1(b) and 28 U.S.C. § 2403(b) and provided notice to the Washington Attorney General's Office on November 1, 2024. Dkt. No. 43. The Court's certification order also stayed consideration of Block's motion pending the State's intervention or the expiration of 60 days, with a briefing

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 1

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1 schedule to be reset after that. *Id.* Block also provided notice to the State on November 5, 2024.

2 Dkt. No. 44. The State filed an unopposed motion to intervene[1] on December 27, 2024, which

3 was granted on December 30, 2024. Dkt. Nos. 50, 51.

### III.    ARGUMENT

Block's constitutional challenge fails out of the gate because it is based entirely on an "extraterritoriality" principle unanimously rejected by the U.S. Supreme Court in 2023. Moreover, even if Block had attempted to articulate a dormant Commerce Clause challenge on a different theory, such a challenge would fail.

### A.    The U.S. Supreme Court Rejected Block's Extraterritoriality Argument in 2023

Block's constitutional challenge is based on the idea that a state statute that has practical effects outside the state's borders—or projects its regulatory scheme outside its borders—is a violation of the dormant Commerce Clause. *See* Dkt. No. 40 at 6-7. In support of that argument, Block cites *Healy v. Beer Institute, Inc.*, 491 U.S. 324 (1989), and a handful of out-of-jurisdiction district court cases relying on *Healy*. But Block's reliance on these cases is misplaced, because in *National Pork Producers Council v. Ross*, 598 U.S. 356, 368 (2023), the U.S. Supreme Court unanimously rejected that characterization of *Healy*. Block fails to discuss *National Pork Producers* and never acknowledges that it is dispositive of the claim here.

### 1.    State statutes may have extraterritorial effect without offending the Constitution

There is no blanket rule against state statutes with extraterritorial effects. Indeed, if there was such a rule, it is hard to imagine how the interconnected modern economy would continue to function. *Nat'l Pork Producers*, 598 U.S. at 374-75 ("In our interconnected national marketplace, many (maybe most) state laws have the 'practical effect of controlling'

---

[1] The State intervenes solely for the limited purpose of defending the constitutionality of the challenged statute, pursuant to 28 U.S.C. § 2403. It takes no position with respect to other issues raised in the litigation.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 2

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

extraterritorial behavior."). Rather, as the U.S. Supreme Court recently explained, the dormant Commerce Clause prohibits only discrimination against out-of-state interests and the imposition of substantial burdens on interstate commerce that outweigh the putative local benefits of the challenged law.

Historically, courts have observed that the extraterritorial application of certain state laws raised dormant Commerce Clause concerns. Specifically, in *Healy*, the U.S. Supreme Court noted that in some situations "a statute that directly controls commerce occurring wholly outside the boundaries of a state exceeds the inherent limits of the enacting State's authority." 491 U.S. at 336. Such legislation may have the "practical effect . . . [of] control[ing] conduct beyond the boundaries of the State." *Id.* In the years that followed, some courts read *Healy* to mean that in addition to the classic tests for dormant Commerce Clause challenges (*see* Part III.B, *infra*), there existed a separate rule prohibiting statutes with extraterritorial effects. *See, e.g.*, *United Res. Sys., Inc. v. Wilson*, 614 F. Supp. 3d 243, 256 (D.S.C. 2022).

In 2023, however, the U.S. Supreme Court clarified that extraterritorial effects alone do not violate the dormant Commerce Clause. Petitioners in *National Pork Producers v. Ross* challenged California's law governing farm conditions for pork sold in California. Petitioners conceded the law did not "seek[] to advantage in-state firms or disadvantage out-of-state rivals." *Nat'l Pork Producers*, 598 U.S. at 370. According to the Court, this left them in a "tough spot" pursuing "two more ambitious theories." *Id.* at 371.

> In the first, petitioners invoke what they call "extraterritoriality doctrine." They contend that our dormant Commerce Clause cases suggest an additional and "almost *per se*" rule forbidding enforcement of state laws that have the "practical effect of controlling commerce outside the State," even when those laws do not purposely discriminate against out-of-state economic interests. Petitioners further insist that Proposition 12 offends this "almost *per se*" rule because the law will impose substantial new costs on out-of-state pork producers who wish to sell their products in California.

*Id.* (citations omitted). In support of those arguments, petitioners cited *Healy*, the same case Block relies on here.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 3

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    The Court then squarely rejected the argument that *Healy* stands for the *per se*
2    proposition that laws with extraterritorial effects violate the dormant Commerce Clause.
3    Concluding that "petitioners read too much into too little," the Court explained that the
4    challenged statutes in *Healy* and other extraterritoriality cases "had a *specific* impermissible
5    'extraterritorial effect'—they deliberately 'prevent[ed out-of-state firms] from undertaking
6    competitive pricing' or 'deprive[d] businesses and consumers in other States of 'whatever
7    competitive advantages they may possess.'" *Nat'l Pork Producers*, 598 U.S. at 371 (quoting
8    *Healy*, 491 U.S. at 338-39). Although several Justices wrote separately, "the Court unanimously
9    disavow[ed] petitioners' 'almost per se' rule against laws with extraterritorial effects." *Id.* at
10   389 n.4; *see also id.* at 394 (Roberts, C.J., concurring in part); *id.* at 403, n.1 ("The Court also
11   unanimously rejects plaintiffs' separate claim under *Healy* . . . .") (Kavanaugh, J., concurring in
12   part).

13       In rejecting an almost per se rule against extraterritoriality, the Court clarified that it did
14   not "trivialize the role territory and sovereign boundaries play in our federal system." *Nat'l Pork
15   Producers*, 598 U.S. at 375-76. Instead, it explained that other express provisions of the
16   Constitution, including the Due Process Clause and the Full Faith and Credit Clause may be
17   relevant to the analysis. *Id.* (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985)).
18   But in this case, even those provisions support CEMA's extraterritorial application to
19   Washington residents temporarily outside the state's borders, because Washington undoubtedly
20   has a state interest in protecting its consumers, even those who are temporarily outside the state.
21   *See Phillips Petroleum Co.*, 472 U.S. at 818 (under the Due Process Clause, a state may apply
22   its law as long as it has "a significant contact or significant aggregation of contacts, creating state
23   interests, such that choice of its law is neither arbitrary nor fundamentally unfair"); *Nat'l Pork
24   Producers*, 598 U.S. at 376 (observing that a State's extraterritorial reach ends at "acts
25   committed 'outside [the first State's] jurisdiction' that are not 'intended to produce [or that do
26   not] produc[e] detrimental effects within it'") (quoting *Strassheim v. Daily*, 221 U.S. 280, 285

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 4

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  (1911)). Cases striking down laws under these provisions are limited to those instances where
2  the challenged regulation governs extraterritorial conduct involving individuals "with *no*
3  connection to the State." *Nat'l Pork Producers*, 598 U.S. at 376 n.1 (distinguishing *Edgar v.*
4  *MITE Corp.*, 457 U.S. 624 (1982)). Accordingly, they are vastly different from the CEMA,
5  which protects Washington consumers.

6  **2.  The other cases on which Block relies were decided before *National Pork***
**Producers* clarified *Healy***
7

8  Block cites three other out-of-district cases invalidating telecom statutes as
9  extraterritorial violations of the dormant Commerce Clause. *See United Res. Sys., Inc.*,
10  614 F. Supp. 3d at 256; *TelTech Sys., Inc. v. Barbour*, 866 F. Supp. 2d 571, 575-76
11  (S.D. Miss. 2011); *TelTech Sys., Inc. v. McCollum*, No. 08-61664-CIV, 2009 WL 10626585,
12  at *8 (S.D. Fla. July 16, 2009). Block also cites three cases from the Western District interpreting
13  the Washington Automatic Dialing and Announcing Device statute (WADAD). Dkt. No. 40,
14  p. 7-8; s*ee Hartman v. United Bank Card, Inc.*, 291 F.R.D 591 (W.D. Wash. 2013); *Booth v.*
15  *Appstack, Inc.*, No. C13-1533JLR, 2015 WL 1466247 (W.D. Wash. Mar. 30, 2015); *Taylor v.*
16  *Universal Auto Group I, Inc.*, No. 3:13-CV-05245-KLS, 2014 WL 6654270 (W.D. Wash.
17  Nov. 24, 2014). All of these cases rely on *Healy* for the purported rule against extraterritoriality,[2]
18  and all were decided before *National Pork Producers*. *See, e.g.*, *Hartman*, 291 F.R.D. at 598 ("A
19  prohibited extraterritorial law is one in which the 'practical effect of the regulation is to control
20  conduct beyond the boundaries of the State.'") (quoting *Healy*, 491 U.S. at 336); *United Res.*
21  *Sys., Inc.*, 614 F. Supp. 3d at 257 ("[T]he Supreme Court has held that 'extraterritorial legislation
22  . . . where a state law that has the practical effect of regulating commerce occurring wholly
23  outside that State's borders is invalid under the Commerce Clause.") (cleaned up) (quoting *Healy*

24

25  _____

26      [2] The *Taylor* court cites *Hartman*, which in turn relies on *Healy*. *See Taylor*,
2014 WL 6654270 at *6.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 5

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  at 332). This Court should give no weight to any of these authorities in light of *National Pork*

2  *Producers'* subsequent clarification of the law.

3  Moreover, none of these cases involved CEMA. The three out-of-district cases are also

4  distinguishable because they involved state statutes prohibiting spoofing numbers on caller ID

5  systems that imposed criminal sanctions and were arguably preempted by federal law.[3] Further,

6  Block fails to note that one of the cases was appealed to the Fifth Circuit, which declined to

7  endorse the extraterritoriality dormant Commerce Clause argument and affirmed on preemption

8  alone. *See TelTech Sys., Inc. v. Bryant*, 702 F.3d 232, 239 (5th Cir. 2012).

9  Block's attempt to invalidate CEMA runs headlong into *National Pork Producers*. Block

10  has not alleged any discriminatory effect or substantial burden on interstate commerce—nor

11  could it sustain such allegations if it tried. *See* Part III.B, *infra*. This Court should therefore reject

12  Block's challenge, which if granted "would cast a shadow over laws long understood to represent

13  valid exercises of the States' constitutionally reserved powers. It would provide neither courts

14  nor litigants with meaningful guidance in how to resolve disputes over them. Instead, it would

15  invite endless litigation and inconsistent results." *Nat'l Pork Producers*, 598 U.S. at 374-75.

16  Take, for example, the numerous state statutes using residency to define the scope of

17  application of their telephone solicitation statutes. *See, e.g.*, Conn. Gen. Stat. § 42-284(7)

18  (defining "[d]oing business in this state" to include making telephone sales calls "from a location

19  outside of this state to resident consumers" or "to a telephone number with a Connecticut area

20

21  [3] Block does not argue that CEMA is preempted by federal law, nor could it. All regulated

22  parties must do to comply with CEMA is obtain express affirmative consent before sending unsolicited commercial text messages. Block cannot point to a single state or federal statute that

23  prohibits the practice of obtaining consent before sending such messages. Nor does Block—a sophisticated financial services company operating in numerous jurisdictions with nearly $55

24  billion in market capitalization and close to 12,000 employees—credibly explain how it cannot successfully navigate the requirements imposed by CEMA and other states' laws governing

25  commercial text messages. *See* Block, Inc.'s 2024 Form 10-Q at 40, 86 (Sept. 30, 2024), *available at* https://s29.q4cdn.com/628966176/files/doc_financials/2024/q3/08328a34-478b-

26  43e4-8127-4a1e2633ffd5.pdf; Block Inc., Yahoo Finance Quote (last checked Jan. 17, 2025).

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 6

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

code"); Fla. Stat. § 501.059(8)(d) ("There is a rebuttable presumption that a telephonic sales call made to any area code in this state is made to a Florida resident or to a person in this state at the time of the call."). Modern state privacy statutes also often define the scope of their application with reference to the residency of consumers, including residents that are temporarily outside the state. *See, e.g.*, Cal. Civ. Code § 1798.140 (West) (defining "consumer" for purposes of the California Consumer Privacy Act as "a natural person who is a California resident, as defined in Section 17014 of Title 18 of the California Code of Regulations" which further defines a "resident" as "(1) every individual who is in the State for other than a temporary or transitory purpose, and (2) every individual who is domiciled in the State who is outside the State for a temporary or transitory purpose"). Under Block's strained reading of the dormant Commerce Clause, all of these statutes would presumably be unconstitutional.

## B.    CEMA Does Not Violate the Dormant Commerce Clause

Block never attempts to justify its dormant Commerce Clause challenge based on existing jurisprudence. For that reason, the Court need not consider the challenge further. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 n.2 (9th Cir. 2003) ("[I]ssues not argued with specificity in briefing will not be addressed."). In the event it does review the argument, it should conclude that CEMA does not violate the dormant Commerce Clause.

The Commerce Clause of the U.S. Constitution empowers Congress "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. "Reading between the Constitution's lines," the Supreme Court has held that "the Commerce Clause not only vests Congress with the power to regulate interstate trade; the Clause also contains a further, negative command" that forbids enforcement "of certain state economic regulations even when Congress has failed to legislate on the subject." *Nat'l Pork Producers*, 598 U.S. at 368 (cleaned up). Courts refer to "[t]his 'negative' aspect of the Commerce Clause" as the "dormant Commerce Clause." *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 515 (2019) (quotation omitted). The Supreme Court has cautioned

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 7

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  federal courts to utilize "extreme caution" before deploying the "implied authority" of the

2  dormant Commerce Clause. *Nat'l Pork Producers*, 598 U.S. at 390 (internal quotation marks

3  omitted). "Preventing state officials from enforcing a democratically adopted state law in the

4  name of the dormant Commerce Clause is a matter of 'extreme delicacy,' something courts

5  should do only 'where the infraction is clear.'" *Id.* (quoting *Conway v. Taylor's Ex'r*,

6  66 U.S. 603, 634 (1861)).

7      With this framework in mind, state laws violate the dormant Commerce Clause when

8  they discriminate in favor of their *own* residents and economic interests, to the detriment of out-

9  of-state residents or interests. *See Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 399

10  (9th Cir. 2015). This is because the "primary purpose of the dormant Commerce Clause is to

11  prohibit 'statutes that discriminate against interstate commerce' by providing benefits to 'in-state

12  economic interests' while 'burdening out-of-state competitors.'" *Ass'n des Éleveurs de Canards*

13  *et d'Oies du Québec v. Harris*, 729 F.3d 937, 947 (9th Cir. 2013) (quoting *Nat'l Ass'n of*

14  *Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012)).

15      CEMA has absolutely nothing to do with local economic protectionism. CEMA is a valid

16  exercise of the State's police powers, and it evenhandedly prevents unsolicited commercial text

17  messages sent without prior consent. It is no surprise then that Block does not address—let alone

18  meet its burden to establish—actionable discrimination under the dormant Commerce Clause.

19  Block similarly fails to address or meet its burden to establish that any purported burden on

20  interstate commerce outweighs CEMA's local benefits.

21      **1.      Block's facial challenge to CEMA fails *ab initio***

22      In its motion for summary judgment, Block appears to argue that CEMA is facially

23  unconstitutional. *See, e.g.*, Dkt. No. 40 at 7:23-34 ("By its plain terms, CEMA regulates conduct

24  occurring entirely outside of Washington, rendering it unconstitutional under the dormant

25  Commerce Clause."). Block cannot meet its incredibly high burden to establish that CEMA is

26  facially unconstitutional.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 8

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    To succeed on its facial challenge under the dormant Commerce Clause, Block "must

2    meet a high burden of proof; it must establish that no set of circumstances exists under which

3    [CEMA] would be valid. The fact that [CEMA] might operate unconstitutionally under some

4    conceivable set of circumstances is insufficient to render it wholly invalid." *S.D. Myers, Inc. v.*

5    *City & Cnty. of San Francisco*, 253 F.3d 461, 467 (9th Cir. 2001) (internal quotation marks

6    omitted). Because of this high burden, this Court must "construe [CEMA] narrowly and resolve

7    any ambiguities in favor of the interpretation that most clearly supports constitutionality." *Id.* at

8    468.

9         Block's argument on its facial challenge boils down to this sentence in its brief:

10        Under CEMA's unambiguous terms, an entire text communication can be sent
          between users who, by virtue of mobile phones, are Washington residents but are
11        temporarily living or traveling outside of Washington, and still, fall within the
          ambit of CEMA's reach.
12

13   Dkt. No. 40, at 8:6-9. While the State rejects Block's suggestion that this scenario would violate

14   the dormant Commerce Clause, this sentence proves fatal to Block's facial challenge for another

15   reason: it necessarily concedes that CEMA covers at least one constitutional circumstance, i.e.,

16   a text communication sent between users who are both physically located in Washington at the

17   time the communication is sent and received. Indeed, to interpret CEMA any other way would

18   be absurd, and it would violate the Ninth Circuit's instructions to "construe [CEMA] narrowly

19   and resolve any ambiguities in favor of the interpretation that most clearly supports

20   constitutionality." *S.D. Myers,* 253 F.3d at 468.

21        Additionally, there can be no reasonable dispute that CEMA legitimately and

22   constitutionally applies to two other scenarios: (1) all commercial text messages sent from a

23   Washington company; and (2) commercial text messages sent from a company outside of

24   Washington to a Washington resident physically located in Washington upon receipt. There can

25   be no reasonable dispute that CEMA does not cover commercial text messages sent from a

26   company outside of Washington to a consumer who is not a Washington resident. To be clear,

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 9

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

CEMA does not cover commercial text messages sent from a Florida company to a South Carolina resident. Thus, the gravamen of Block's dormant Commercial Clause challenge—whether facial or as-applied—boils down to the single hypothetical scenario where a company outside of Washington sends a commercial text message to Washington resident who happens to be physically located outside of Washington at the time of receipt. As detailed below, this narrow circumstance is not discrimination under the dormant Commerce Clause and does not present a substantial burden on interstate commerce. Block's challenge cannot survive scrutiny.

**2.      Block does not allege and cannot establish discrimination under the dormant Commerce Clause**

The dormant Commerce Clause inquiry has two steps. The threshold question is whether the law is discriminatory. *See Rocky Mtn. Farmers Union v. Corey*, 730 F.3d 1070, 1087 (9th Cir. 2013). If the law is discriminatory, it is presumptively invalid unless the state has "no other means to advance a legitimate local purpose." *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338-39 (2007). If the law is non-discriminatory, however, it is presumptively valid unless the burden on interstate commerce is "'clearly excessive in relation to the putative local benefits.'" *Sullivan v. Oracle Corp.*, 662 F.3d 1265, 1271 (9th Cir. 2011) (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). This second step of weighing the burden on interstate commerce against the putative local benefits of a non-discriminatory law is often referred to as "*Pike* balancing." *See Nat'l Pork Producers*, 598 U.S. at 393 (Barrett, J., concurring).

The term "discrimination" has a specific meaning in the dormant Commerce Clause context: "economic protectionism, or discrimination, 'simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" *Rocky Mtn. Farmers Union*, 730 F.3d at 1087 (quoting *Oregon Waste Sys., Inc. v. Dep't of Env't Quality of State of Or.*, 511 U.S. 93, 99 (2014)). Thus, "[m]ere differential treatment of in-state and out-of-state interests is insufficient to establish discrimination. Rather, there must be some

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 10

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

economic benefit to in-state interests or some economic burden on out-of-state interests." *Mitchell v. Atkins*, 483 F. Supp. 3d 985, 997 (W.D. Wash. 2020), *vacated and remanded on other grounds by Mitchell v. Atkins*, No. 20-35827, 2022 WL 17420766 (9th Cir. Dec. 2, 2022) (citing *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978)).

It is well established that the "party challenging the statute bears the burden of showing discrimination." *Black Star Farms LLC v. Oliver*, 600 F.3d 1225, 1230 (9th Cir. 2010). Despite this, Block fails to even address the concept of discrimination. Indeed, the word "discrimination" is nowhere in Block's motion for summary judgment, nor is there any discussion of how CEMA could benefit Washington economic interests at the expense of out-of-state interests. Block has waived any argument on this issue. *See Carmickle*, 533 F.3d at 1162 n.2; *Heft v. Moore*, 351 F.3d 278, 285 (7th Cir. 2003) ("The failure to cite cases in support of an argument waives the issue. . . ."); *Thomas v. Newport Beach Auto. Grp., LLC*, No. 8:24-CV-00030-JLS-KES, 2024 WL 4002839, at *5 (C.D. Cal. July 29, 2024) ("Having failed to properly support the argument, [the moving party] has waived it for the purposes of this motion.").

Block instead focuses upon the concept of extraterritoriality. Dkt. No. 40 at 6-12. But, as discussed in Part III.A, *supra*, the so-called "extraterritoriality doctrine" merely "typifies the familiar concern with preventing purposeful discrimination against out-of-state economic interests." *Nat'l Pork Producers*, 598 U.S. at 371. Again, Block fails to discuss discrimination and pointedly ignores *National Pork Producers* in its briefing.

Nevertheless, even if Block has not waived the issue, it cannot establish discrimination. Discrimination under the dormant Commerce Clause—regardless of the test or approach at issue—is not an abstract notion comparing generic economic interests. Rather, "any notion of discrimination assumes a comparison of substantially similar entities." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298 (1997); *Black Star Farms*, 600 F.3d at 1230 ("Differential treatment must be as between persons or entities who are similarly situated."). Thus, to establish discrimination under the dormant Commerce Clause, Block (an out-of-state company) must

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 11

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  establish that CEMA economically disadvantages it compared to a substantially similar

2  commercial text messenger in Washington. Block's briefing contains no such analysis, and it

3  could not prove it in any event. This is because there is no benefit to in-state commercial text

4  messenger at the expense of out of state commercial text messenger—it is just as illegal for a

5  Washington company to send an unsolicited commercial text to a Washington resident without

6  prior authorization as it is for an out-of-state company to send the same text.

7      **3.      Block does not allege and cannot establish a significant burden on interstate**
        **commerce**

8

9      As detailed above, CEMA is a non-discriminatory law—facially or otherwise. Thus, even

10  assuming the Court needs to reach *Pike* balancing, CEMA violates the dormant Commerce

11  Clause only if the burden on interstate commerce is "clearly excessive in relation to the putative

12  local benefits." *Sullivan*, *supra*, 662 F.3d at 1271 (quotation marks omitted). More specifically,

13  "the party challenging the regulation . . . must establish that the burdens that the regulation

14  imposes on interstate commerce clearly outweigh the local benefits arising from it." *Kleenwell*

15  *Biohazard Waste & Gen. Ecology Consultants, Inc. v. Nelson*, 48 F.3d 391, 399 (9th Cir. 1995).

16      Block, as the party challenging CEMA, bears the burden on this issue. *Rosenblatt v. City*

17  *of Santa Monica*, 940 F.3d 439, 452 (9th Cir. 2019), *cert. denied*, 140 S.Ct. 2762 (2020);

18  *Kleenwell*, 48 F.3d at 399. The Court must "presume the law serves the [State's] legitimate

19  interests; it is [Block's] burden to plausibly allege otherwise." *Rosenblatt*, 940 F.3d at 452 (citing

20  *Spoklie v. Montana*, 411 F.3d 1051, 1059 (9th Cir. 2005)). Other than its doomed

21  extraterritoriality arguments discussed in Part III.A, *supra*, though, Block fails to even address

22  the burdens CEMA allegedly places on interstate commerce. Block similarly fails to address

23  *State v. Heckel,* 143 Wash. 2d 824, 839-840 (2001), *cert. denied*, 534 U.S. 997 (2001)

24  (*Heckel I*), in which the Washington Supreme Court held that CEMA's prohibition of misleading

25

26

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 12

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

commercial email messages "does not unduly burden interstate commerce."[4]

Thus, because Block has failed to establish significant burden—indeed, it fails to even address the issue—*Pike* balancing is unnecessary.

### 4. Even under *Pike*, CEMA is constitutional

Even assuming the Court needs to reach the merits of *Pike* balancing, CEMA easily survives constitutional scrutiny under the dormant Commerce Clause.

As the Ninth Circuit has recognized, "'only a small number of cases invalidating laws under the dormant Commerce Clause have involved laws that were genuinely nondiscriminatory' but still imposed a clearly excessive burden on interstate commerce." *Rosenblatt*, 940 F.3d at 452 (cleaned up) (quoting *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1141 (9th Cir. 2015)).

In any event, *Pike* balancing "does not invite courts to second-guess legislatures by estimating the probable costs and benefits of the statute, nor is it within the competency of courts to do so." *Brown & Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200, 209 (2d Cir. 2003). Rather, the Court must "presume the law serves the [State's] legitimate interests; it is [Block's] burden to plausibly allege otherwise." *Rosenblatt*, 940 F.3d at 452. Indeed, the plurality opinion in *National Pork Producers* "held that courts should not even attempt to quantify a state law's local 'benefits' or compare those benefits to the law's costs unless a challenger has first shown that the law inflicts 'substantial burdens' on interstate commerce[.]" *Truesdell v. Friedlander*, 80 F.4th 762, 774 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 1344 (2024), *and cert. denied*, 144 S. Ct. 1346 (2024). Thus, even though Block utterly fails to allege or establish a substantial burden on interstate commerce, it is the starting point of the analysis.

---

[4] The *Heckel I* court similarly recognized that extraterritoriality may implicate jurisdictional questions, but that those questions are unrelated to the dormant Commerce Clause analysis and should be analyzed under a separate framework. *Heckel I*, 143 Wash.2d at 838-39. *Heckel I* was also decided before *National Pork Producers* clarified the relationship between extraterritoriality and the dormant Commerce Clause.

Even assuming the Court needs to address local benefits, "*Pike* discusses whether the burden on interstate commerce is 'clearly excessive in relation to the *putative* local benefits.'" *Nat'l Ass'n of Optometrists*, 682 F.3d at 1155 (quoting *Pike,* 397 U.S. at 142) (emphasis in original). *Pike* "does not mention actual benefits as part of the test for determining when a regulation violates the dormant Commerce Clause." *Id.* The putative benefits of CEMA are plain—avoiding the harassment of and potential cost to consumers by unwanted commercial text messages, which are "matters vitally affecting the public interest." Wash. Rev. Code § 19.190.060(2). This is exactly what the Washington Legislature stated when passing the law:

> The legislature recognizes that the number of unsolicited commercial text messages sent to cellular telephones and pagers is increasing. This practice is raising serious concerns on the part of cellular telephone and pager subscribers. These unsolicited messages often result in costs to the cellular telephone and pager subscribers in that they pay for use when a message is received through their devices. The limited memory of these devices can be exhausted by unwanted text messages resulting in the inability to receive necessary and expected messages. . .

S.H.B. 2007, ch. 137, § 1 (2003). And "[c]ourt[s] will assume that the objectives articulated by the legislature are actual purposes of the statute, unless an examination of the circumstances forces [courts] to conclude that they could not have been a goal of the legislation." *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 463 n.7 (1981) (internal quotation omitted).

Additionally, an unwanted commercial text message prohibited by CEMA is "an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose of applying the consumer protection act." Wash. Rev. Code § 19.190.060(2). Both this Court and the Supreme Court have recognized that states have an important interest in protecting the public from unfair and deceptive business practices. *See, e.g.*, *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460 (1978) (citing the "general interest in protecting consumers and regulating commercial transactions" in stating that "[t]he state interests implicated in this case are

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 14

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

particularly strong"); *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651 (1985) (recognizing "the state's interest in preventing deception of consumers."); *In re Park W. Galleries, Inc.*, No. MDL 09-2076RSL, 2010 WL 56044, at *4 (W.D. Wash. Jan. 5, 2010) (recognizing that "the protection of consumers" "advances legitimate state interests" in the dormant Commerce Clause arena).

## C. Washington's Policy of Limiting Unsolicited Commercial Text Messages is Constitutional

Block's constitutional challenge fails for all of the reasons discussed above. But it also bears emphasizing the havoc Block's position would wreak on Washington's public policy of protecting consumers and the balance between various state and federal laws governing commercial text messages.

CEMA is one of many commercial texting statutes across the country. *See, e.g.*, Conn. Gen. Stat. § 42-288a; Fla. Stat. § 501.059(5); Ind. Code § 24-4.7-2-9; N.J. Stat. Ann. § 2A:65D-2; Okla. Stat. Title 15, § 775C.3; Va. Code Ann. § 59.1-514; Wis. Admin. Code § ATCP 127.82. Many businesses that send commercial text messages have demonstrated the ability to navigate those various laws, and only send text messages to Washingtonians who have consented to receive such texts. Moreover, in enacting CEMA, Washington's Legislature recognized that the statute should protect Washington consumers from both direct and indirect effects.

Any commercial text message transmitted to a telephone number assigned to a Washington resident has the potential to affect the people of the state of Washington. Violations of CEMA are per se violations of the Consumer Protection Act (CPA), Wash. Rev. Code § 19.86, Wash. Rev. Code § 19.190.100. The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," Wash. Rev. Code § 19.86.020, where "trade or commerce" means "any commerce directly or

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 15

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   *indirectly* affecting the people of the state of Washington." Wash. Rev. Code § 19.86.010(2)

2   (emphasis added).

3       A plaintiff need not have a consumer relationship with the defendant to establish a

4   violation of the CPA. *Panag v. Farmers Inc. Co. of Wash.*, 166 Wash. 2d 27, 39-40,

5   204 P.3d 885 (2009) ("Under the plain language of the act, it is not necessary to establish any

6   consumer relationship, direct or implied, between the parties."). CEMA's focus is the conduct

7   of senders that target Washington consumers, even if that relationship is indirect in some

8   instances. *Heckel I*, 143 Wash. 2d at 839. For example, if the text recipient is not located in

9   Washington at the time of receipt but the telephone number is assigned to a Washington

10  resident's address, the message or text may nevertheless impact the Washington resident whose

11  address was used to register the telephone number—such as a parent paying the telephone bill

12  for a child attending college in a non-Washington state. *See e.g.*, *id.* at 835 ("This cost-shifting

13  … has been likened to sending junk mail with postage due or making telemarketing calls to

14  someone's pay-per-minute cellular [plan]."). The Ninth Circuit has acknowledged that states

15  have a "'substantial interest in preventing the shifting of advertising costs to consumers.'"

16  *Id.* at 836 (quoting *Destination Ventures, Ltd. v. F.C.C.*, 46 F.3d 54, 56 (9th Cir. 1995)).

17  Similarly, a consumer temporarily located outside Washington state when the text is received,

18  but residing in Washington, may continue to experience the impact of the unwanted message

19  after their return—such as paying the cellular bill or spending time deleting past unwanted text

20  messages.

21      Thus, a finding that CEMA is unconstitutional because the recipient of the text messages

22  may not be located in Washington at the time of receipt, would be contrary to Washington's

23  public policy of curtailing the conduct of businesses who intend to target Washington consumers

24  with unwanted text messages and whose conduct impacts Washington consumers.

25

26

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 16

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# IV.    CONCLUSION

Block's dormant Commerce Clause challenge is based on a theory that was unanimously rejected by the U.S. Supreme Court. CEMA is a non-discriminatory law that does not impose substantial burdens on interstate commerce, and Block never suggests otherwise. Block's half-hearted attempt to invalidate an important consumer protection statute with an argument based on bad law should end here. The State respectfully requests the Court reject the constitutional challenge in Block's Motion for Summary Judgment.

DATED this 21st day of January, 2025.

NICHOLAS W. BROWN
Attorney General

*/s Ben Brysacz*
BEN BRYSACZ, WSBA #54683
BOB HYDE, WSBA #33593
MINA SHAHIN #46661
Assistant Attorneys General
Attorneys for Plaintiff State of Washington
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

*I certify that this memorandum contains 5,509 words, in compliance with the Local Civil Rules.*

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 17

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744